DOMINIQUE DOSS,

       Plaintiff,

v.                                             Case No.  2:16-cv-135
                                             HON. JANET T. NEFF

THOMAS MACKIE, et al.,

       Defendants.
_____/

# REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Dominque Doss pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the remaining Defendant, Dr. Chung Oh, denied him medical care in violation of the Eighth Amendment. Defendant Dr. Oh filed a motion for summary judgment (ECF No. 67) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (ECF No. 71). Additionally, Defendant Dr. Oh filed a motion for summary judgment (ECF No. 73) arguing that he could not have violated Plaintiff's Eighth Amendment rights. Plaintiff has filed a response (ECF No. 77). Defendant has filed a reply (ECF No. 78).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so

powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id.* at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendant Dr. Oh argues that Plaintiff failed to properly exhaust a grievance asserting that Dr. Oh denied medical care. Specifically, Defendant Dr. Oh asserts that Plaintiff never properly filed grievance AMF 15-09-2352-12d3 because the grievance was rejected at Step III. Plaintiff argues that the MDOC denied the merits of his grievance at Step I and Step II and did not reject the grievance until the final Step. Plaintiff argues that he exhausted a claim against Dr. Oh.

Plaintiff filed a Step I grievance asserting that Dr. Oh denied him medical care for chronic pain and inflammation in his knees, elbows, hip, and lower spine (ECF No. 45-3, PageID.264). The grievance was denied because Plaintiff was being treated (PageID.265). The Step II response indicated that "disagreement with the plan of care does not constitute a denial of treatment" (PageID.263). It was not until Plaintiff filed a Step III grievance that a determination was made that Plaintiff failed to follow the proper MDOC grievance procedures. The Step III response rejected the grievance because there was no indication that Plaintiff attempted to resolve the grievance prior to filing in accordance with Policy Directive 03.02.130 (PageID.261).

The Sixth Circuit's opinion in *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011) is instructive. The Court decided:

> Here, the grievance was rejected under the procedural rule on timely filing at the first step, improperly rejected under another procedural rule at the second step, and rejected on the merits at the third step. We determine whether this constitutes proper exhaustion by reference to habeas doctrine. *See id.* at 325. *Reed–Bey* states that in habeas cases, " 'a procedural default does not bar consideration of a federal claim ... unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar,' or it is otherwise clear they did not evaluate the claim on the merits." *Id.* (quoting *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Here, the Step III response (the equivalent of the last state court in habeas) did not "clearly and expressly" state that Reynolds–Bey's fifth grievance was being rejected on procedural grounds. Rather, it mentioned the procedural bases for the Step I and II decisions and then rested its determination on the substantive ground that "[d]ismissals/not guilty findings in major misconduct hearings are not considered proof of misconduct on the part of the author of the misconduct or on the part of any other staff." (R. 32–4 at 6.) Therefore, we find that Grievance OTF 05–03–00153–28E was exhausted for purposes of the PLRA.

*Id.* at 502.

In this case, the Step III response clearly indicates that Plaintiff's grievance was rejected due to his failure to comply with the procedural rule that requires an attempt to resolve the issue before filing a grievance. In the opinion of the undersigned, *Reynolds-Bey v. Harris* makes it clear that where a Step III response rejects a grievance for failing to follow MDOC grievance procedure, the grievance cannot be considered properly exhausted under the policy. Accordingly, in the opinion of the undersigned, dismissal without prejudice is appropriate in this action.

Defendant Dr. Oh also filed a motion for summary judgment on the merits seeking dismissal with prejudice. Defendant Dr. Oh argues that he was not deliberately indifferent to a serious medical need of Plaintiff. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth

7

Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."

8

*Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize

claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Defendant Dr. Oh was one of the physicians who treated Plaintiff between August 2014 and October 2016. Plaintiff engaged in a hunger strike in August 2014. (ECF No. 75-1, PageID.668-671). Plaintiff refused an examination with Dr. Oh on August 21, 2014. (PageID.671). Plaintiff sent a kite on November 10, 2014, for a medical evaluation. (PageID.675). Plaintiff wanted blood drawn to check all his organ body functions, complained of malnutrition, migraines, pressure around the temple, aches in the back of his eyes, blurry vision, nose bleeds, loss of balance, heart pain, irregular heartbeat, shortness of breath, muscle spasms, loss of sleep, dry itchy scalp, irritation under arms with rash, and pain in his kidneys. *Id*. On November 20, 2014, Dr. Oh examined Plaintiff and found Plaintiff in no distress upon physical examination. Dr. Oh ordered routine lab tests. (PageID.674, 676-678).

Plaintiff kited with similar complaints and was seen by a nurse on November 22, 2014. (PageID.679). Plaintiff was seen by a nurse on November 25, 2014, for fatigue and a dry scalp. (PageID.681-683). Dr. Oh examined Plaintiff on December 1, 2014, and explained that the lab results were unremarkable. (PageID.685-686). Dr. Oh examined Plaintiff on December 17,

10

2014, for headaches upon awakening. (PageID.691-692). Dr. Oh prescribed Excedrin Migraine tablets as needed for headaches. *Id.* On March 11, 2015, Dr. Oh attempted to treat Plaintiff for complaints of pain and joint lock-up, but Plaintiff refused the examination. (PageID.696).

Plaintiff complained of pain, stiffness, swelling in his elbows, knees, and hips, migraine headaches, and drowsiness. (PageID.697). Plaintiff was initially evaluated by a nurse. Dr. Oh saw Plaintiff on March 24, 2015. (PageID.700-703). Upon physical examination, Dr. Oh found no apparent distress and no swelling. Dr. Oh told Plaintiff to refrain from heavy lifting, jumping, or running until he is pain free.

Plaintiff complained on May 9, 2015, of chronic pain, stiffness, and swelling. (PageID.703). Plaintiff saw a nurse on May 13, 2015, and requested stronger pain medication. (PageID.704). Dr. Oh examined Plaintiff on May 20, 2015, due to his complaints of pain in his keens, ankles, hips, elbows, and wrists. (PageID.707-709). Plaintiff stated that he did 250 push-ups each day. Plaintiff's examination was normal and Dr. Oh told Plaintiff not to lift heavy weight. Plaintiff's Excedrin Migraine medication was renewed. Plaintiff refused lab work. (PageID.710-711).

Dr. Oh examined Plaintiff on July 6, 2015, for complaints of chronic pain. (PageID.714-716). Plaintiff explained that he had been forcibly restrained years ago and also engaged in a lot of daily exercise. Dr. Oh advised Plaintiff to stretch his muscles each day, refrain from lifting heavy weights, and to continue on current medications. Dr. Oh ordered laboratory tests. Dr. Oh examined Plaintiff on July 31, 2015, for complaints of joint pain. (PageID.717-719). Plaintiff's physical examination was normal and Dr. Oh instructed Plaintiff to perform stretching exercises three to four times per day. Dr. Oh examined Plaintiff on October 6, 2015. (PageID.720-

722). Plaintiff complained of pain in his wrist, knees, back, elbows, and hips. Plaintiff stated that he played basketball frequently. Plaintiff's physical examination was unremarkable. Plaintiff was in no apparent distress, well nourished, and well developed. Dr. Oh ruled out rheumatoid arthritis. Dr. Oh instructed Plaintiff to purchase Tylenol for pain and to refrain from heavy lifting. Dr. Bonefeld examined Plaintiff on December 23, 2015, when Plaintiff presented complaints of headache. Dr. Bonefeld diagnosed Plaintiff as suffering with a Migraine headache. (PageID.727-728). Dr. Bonefeld renewed prescription medication for pain relief, artificial tears, and Excedrin Migraine. (PageID.726).

On February 12, 2016, Plaintiff complained of back pain. (ECF No. 730-731). Dr. Chung diagnosed Plaintiff with a muscle spasm and instructed Plaintiff to continue his medication, to refrain from heavy lifting, and to engage in stretching exercises. Dr. Oh treated Plaintiff for pain in his elbows, knees, and hips on April 27, 2016. (PageID.734-736). Dr. Oh assessed Plaintiff with pain in his joints at multiple sites, and instructed Plaintiff to continue his medication, increase his daily activity level, and stretch 3 or 4 times each day. Dr. Oh ordered lab tests. Dr. Oh examined and treated Plaintiff for the last time on September 21, 2016. (PageID.738-739). Plaintiff indicated that he did not want to take Tylenol because it upset his stomach and that the Excedrin Migraine medication was working well. Dr. Oh ended Plaintiff's Tylenol prescription and renewed Plaintiff's Excedrin Migraine prescription.

Dr. Oh was the primary physician who treated Plaintiff while he was housed at the Baraga Correctional Facility between August 21, 2014, and September 21, 2016. Plaintiff was treated by nurses and at least one other doctor while at the facility. Dr. Oh examined Plaintiff for his complaints of chronic joint pain on numerous occasions and found Plaintiff's physical

12

condition unremarkable.  Dr. Oh ordered laboratory tests on numerous occasions that resulted in normal findings.  Dr. Oh provided Plaintiff with pain medication and instructions to refrain from lifting heavy weights.  In addition, Dr. Oh instructed Plaintiff to engage in regular stretching exercises 3 to 4 times per day.  The medical record establishes that Dr. Oh was responsive to Plaintiff's concerns, examined Plaintiff, treated Plaintiff with pain medication, and provided Plaintiff with instructions for limiting and controlling the onset of pain.  At best, Plaintiff has presented evidence that he disagrees with the treatment that Dr. Oh provided to him.  In the opinion, of the undersigned, Plaintiff has failed to show that Dr. Oh was deliberately indifferent to a serious medical need of Plaintiff.

Accordingly, it is recommended that the Court grant Defendant Dr. Oh's motion for summary judgment (ECF No. 67) due to Plaintiff's failure to exhaust his grievance remedies and dismiss this case without prejudice.  Alternatively, it is recommended that the Court grant Defendant Dr. Oh's motion for summary judgment (ECF No. 73) because Plaintiff cannot show that Dr. Oh violated his rights and dismiss this case with prejudice.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal.  Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   November 7, 2017             */s/ Timothy P. Greeley*
                                                      TIMOTHY P. GREELEY
                                                      UNITED STATES MAGISTRATE JUDGE